CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Isabel Masanque, Esq., SBN 292673
Chris Carson, Esq., SBN 280048
<u>Mail</u>: PO Box 262490
San Diego, CA 92196-2490
<u>Delivery</u>: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Chris Langer**, <br><br> Plaintiff, <br><br> v. <br><br> **Colorado Professional Building, LLC**, a California Limited Liability Company; <br> **I & G Pharmacy, Inc**., a California Corporation; <br><br> Defendants. | **Plaintiff's Reply Brief in Support of Motion for Summary Judgment** <br><br> Date:  June 3, 2019 <br> Time:  10:00 a.m. <br> Ctrm:  10C <br><br> Hon. Judge S. James Otero |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendants oppose Plaintiff's motion for summary judgment on the grounds that Plaintiff lacks standing and that the parking and transaction counter violations have now been remediated. However, Defendants' arguments regarding standing demonstrate a misunderstanding of the standing analysis under *Chapman*. Additionally, the defense has failed to establish mootness because the parking is still not compliant and the violations are the type of violations reasonably expected to recur. There is no defense in this case. The court should grant Plaintiff's motion.

## II. PLAINTIFF HAS MET THE BROAD AND LIBERAL TEST FOR STANDING IN ADA CASES

Given the generous and broad standing requirement for ADA cases, Defendant's arguments against standing lack merit. Decades ago, the Supreme Court held that in civil rights cases—especially where private enforcement suits are the primary method of obtaining compliance—standing must be given a "generous construction" and defined "as broadly as is permitted by Article III of the Constitution."[1] The Ninth Circuit has expressly applied this holding to ADA cases: "The Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act."[2]

In *Chapman v. Pier 1 Imports*,[3] which was decided by an *en banc* panel. *Chapman* holds that an ADA plaintiff: (1) "must demonstrate that he has suffered an injury-in-fact," and (to obtain injunctive relief), (2)

---

[1] *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 & 212 (1972).
[2] *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 -1040 (9th Cir. 2008).
[3] *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011).

2

demonstrate a "real and immediate threat of repeated injury" in the future.[4] Plaintiff will discuss and apply each element to the facts of the present case.

### A. Plaintiff suffered an injury in fact because he personally encountered the inaccessible parking conditions at the Pharmacy on February 27, 2018.

Under the ADA, the general rule is that persons with disabilities are entitled to "full and equal enjoyment" of facilities, privileges and accommodations offered by places of public accommodation.[5] A specific act of discrimination is the "failure to remove architectural barriers" that are readily achievable to remove.[6] The *Chapman* court held, therefore, a plaintiff's rights are violated under the ADA "when a disabled person encounters an accessibility barrier [that] interferes with the plaintiff's full and equal enjoyment of the facility."[7]

But what constitutes a barrier that interferes with full and equal enjoyment? *Chapman* answered this question definitively: "Because the ADAAG establishes the technical standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, *it will impair* the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA. That discrimination satisfies the 'injury-in-fact' element . . . ."[8] This is an *objective* test:

> A disabled person who encounters a "barrier," i.e., an architectural feature that fails to comply with an ADAAG standard relating to his disability, suffers unlawful discrimination as defined by the ADA. Indeed, by establishing a national standard for minimum levels of accessibility in all new facilities, the ADAAG removes the risk of vexatious litigation that a more subjective test would create. Those responsible for new construction are

---

[4] *Chapman*, supra, 631 F.3d at 946.
[5] 42 U.S.C. § 12182(a).
[6] 42 U.S.C. § 12182(b)(2)(A)(iv).
[7] *Chapman*, supra, 631 F.3d at 947.
[8] *Chapman*, supra, 631 F.3d at 947 (emphasis added).

2

on notice that if they comply with the ADAAG's objectively measurable requirements, they will be free from suit by a person who has a particular disability related to that requirement.[9]

In the present case, Mr. Langer was driving his van during his visit to the Pharmacy.[10] When he arrived, he found that there was no van accessible parking space for him to park and deploy his wheelchair. As outlined in Plaintiff's motion, there is no question that this was unlawful barrier. And there can be no question that this barrier relates to Mr. Langer's disability. Mr. Langer is a wheelchair user that requires a compliant access aisle in order to properly and safely exit his vehicle.

Thus, there can be no dispute that Mr. Langer suffered an injury in fact during his visit in February 2018.

**B. Mr. Langer has standing to obtain injunctive relief because he is deterred from returning to Pharmacy until the unlawful barriers are removed.**

The final question before the court in a standing inquiry is whether a plaintiff can establish that there is ongoing injury or a real likelihood of future injury.[11] It is axiomatic that if there is no ongoing or likely future injury, then a plaintiff has no standing for injunctive relief. *Chapman* firmly established that there are two ways to demonstrate such standing: "Demonstrating an intent to return to a noncompliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief. A disabled individual also suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there."[12]

---

[9] *Chapman*, supra, 631 F.3d at 948, fn. 5 (internal cites and quotes omitted for readability).
[10] See Ex. 1 attached hereto, Supplemental Decl. of Langer, ¶ 2.
[11] *Chapman*, supra, 631 F.3d at 946-47.
[12] *Chapman*, supra, 631 F.3d at 949.

Plaintiff's Reply Brief                                    **Case No**. 2:18-CV-03859-SJO-JEM

1    In the present case, Mr. Langer has alleged such deterrence. Because he cannot safely park, he is deterred from further patronizing the property."[13] This evidence is uncontroverted and more than sufficient to meet the threshold for standing, especially given that courts have held that standing should be construed generously, liberally and to the broadest extent possible in these ADA cases.

Moreover, stating an intention to return to a store after the barriers have been fixed is sufficient to establish standing: "When asked in his deposition whether he had any plans to return to the store, Doran answered, 'Yes, once it's fixed.' This deposition testimony demonstrates both *Doran*'s continued deterrence from patronizing the store and his intention to return in the future once the barriers to his full and equal enjoyment of the goods and services offered there have been removed."[14] The *Doran* court summarized, "Allegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent."[15]

Similarly, in the very first case to establish deterrence-standing (a case coincidentally handled by plaintiff's counsel), the Ninth Circuit held, "We hold that a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury.' Similarly, a plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'imminent injury.'"[16]

---

[13] See DKT No. 23-2, Plaintiff's SUF, SUF #11.
[14] *Doran*, 524 F.3d 1034 (9th Cir. 2008).
[15] *Doran*, supra, 524 F.3d at 1041.
[16] *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002).

The defense claims that Mr. Langer cannot prove an intent to return because his visit in February 2018 occurred after attending a mediation. However, Mr. Langer has stated that he travels to Los Angeles County often to eat, shop, attends auctions and other events in the County on a regular and ongoing basis, including Griffith Park, which is less than 10 miles away from the Pharmacy. The Pharmacy is therefore a convenient place for him to shop.[17] Once the violations are removed, he intends to return to the Pharmacy whenever he is in the area.[18]

The defense claims that Mr. Langer does not have any concrete plans to return to the Pharmacy. However, the Ninth Circuit has weighed in on this topic. In *Civ. Rights Educ.*,[19] several disabled plaintiffs sued a hotel chain for inaccessibility under the ADA. They did not have any concrete or specific plans to return and the defendants argued that it was not enough to say that "they do not plan to stay at the hotels unless and until [defendant] remedies the violation."[20] But the Ninth Circuit rejected the defense argument: "The Named Plaintiffs need not intend to visit the hotels until after remediation" because "under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury [that] continues so long as equivalent access is denied."[21] Thus, there is no question that there is ongoing injury or a real likelihood of future injury under these circumstances.

---

[17] See DKT No. 23-2, Plaintiff's SUF, SUF #27
[18] See DKT No. 23-2, Plaintiff's SUF, SUF #28.
[19] *Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093 (9th Cir. 2017)
[20] *Civ. Rights Educ.*, 867 F.3d at 1100.
[21] *Civ. Rights Educ.*, 867 F.3d at 1100-1101.

Plaintiff's Reply Brief                                  **Case No**. 2:18-CV-03859-SJO-JEM

In sum, Plaintiff has met each of the requirements under *Chapman* to establish standing.

## III. THE DEFENDANTS HAVE NOT MET THE "FORMIDABLE" BURDEN OF ESTABLISHING MOOTNESS

"[T]he test for mootness…is a stringent one. Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant free to return to his old ways."[22] Moreover, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."[23] A claimed remedy "might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."[24] The party asserting mootness has "the heavy burden of persuading the Court that the challenged conduct cannot be reasonably expected to recur."[25] One court, presiding over an ADA case, summarized the standard as follows:

> The burden of establishing mootness by voluntary compliance is a heavy one. A request for prospective relief can be mooted by a defendant's voluntary compliance if the defendant meets the "formidable burden" of demonstrating that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Such a burden will typically be met only by changes that are permanent in nature and that foreclose a reasonable chance of recurrence of the challenged conduct.

*Tandy v. City of Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004) (internal cites and quotes omitted for readability).

---

[22] *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203-04 (1968) (citation and internal punctuation omitted).
[23] *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).
[24] *Friends of the Earth,* 528 U.S. at 167.
[25] *Id.*

Here, injunctive relief is not moot because the van accessible parking is still not compliant: the access aisle is three inches too narrow; the access aisle has slopes measuring 6.4%; and the "NO PARKING" lettering is the incorrect size.[26] Additionally, the transaction counter is a non-permanent counter.[27]

Furthermore, the ADA not only requires that businesses provide accessible facilities, i.e. facilities that physically comply with the Access Standards, but they have an ongoing duty to ensure that those accessible features remain ready to be used by persons with disabilities: "A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily achievable to and usable by persons with disabilities . . .." 28 C.F.R. § 36.211(a). The Department of Justice explains the purpose of this Regulation:

> Section 36.211 Maintenance of Accessible Features
>
> Section 36.211 provides that a public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part. The Act requires that, to the maximum extent feasible, facilities must be accessible to, and usable by, individuals with disabilities. This section recognizes that it is not sufficient to provide features such as accessible routes, elevators or ramps, **if those features are not maintained in a manner that enables individuals with disabilities to use them.**

28 C.F.R., Part 36, Appendix C, § 36.211 (emphasis added). "A violation of the ADA can occur where a defendant's business is in compliance with ADAAG requirements, but that defendant does not maintain its compliant features in a useable manner." *Kohler v. Flava Enterprises, Inc.*, 826 F. Supp. 2d 1221, 1227-28 (S.D. Cal. 2011). Here, the defendant failed to

---

[26] See DKT No. 23-2, Plaintiff's SUF, SUF #22-24.
[27] See DKT No. 23-2, Plaintiff's SUF, SUF #26.

maintain their parking space in a useable manner on the date of Mr. Langer's visit. Because paint fades and signs wear, the failure to maintain an accessible parking space is one that can reasonably, and often does, reoccur. This is also especially true for a non-permanent transaction counter that can be removed at any time. Thus, Defendants have failed to establish mootness.

### IV. THE COURT SHOULD MAINTAIN SUPPLEMENTAL JURISDICTION OVER THE UNRUH STATE CLAIM BECAUSE THE FEDERAL CLAIM IS NOT MOOT AND IN THE INTERESTS OF JUDICIAL ECONOMY

As argued above, Plaintiff's federal claim is not moot. However, even if the Court finds that the defendants' remediation is sufficient to establish mootness, this court should still maintain supplemental jurisdiction given the significant resources that have been put into the case and this court's familiarity with the case.

When the federal claims are dismissed from the case, the District Court has discretion whether to maintain its supplemental jurisdiction over the state claims or dismiss them.[28] The "justification" underlying the decision whether to maintain supplemental jurisdiction or dismiss a case, "lies in considerations of judicial economy, convenience and fairness to litigants . . . ."[29] In fact, the Courts have recognized that judicial economy is the "essential policy behind the modern doctrine of pendent jurisdiction" and it supports "the retention of pendent jurisdiction in any case where substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort."[30] In other words, there must be a consideration of the impact

---

[28] *Schneider v. TRW, Inc.*, 938 F.2d 986, 993 (9th Cir. 1991).
[29] *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).
[30] *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966)

Plaintiff's Reply Brief                                   **Case No**. 2:18-CV-03859-SJO-JEM

that dismissal will have on judicial economy with an eye towards the avoidance of multiplicity of litigation.

Thus, in cases where the federal claim is dropped at a stage of the litigation where there has been substantial investment of resources, common sense and judicial economy warrant the keeping of the case. Consider some of the key cases:

- *Aydin Corp. v. Loral Corp.* 718 F.2d 897, 904 (9th Cir. 1983) (district court found to have acted properly in keeping the case, "because the record shows that the court and the litigants had expended considerable time on the pendent claims before the antitrust claims were dismissed.");
- *State of Ariz. v. Cook Paint & Varnish Co.* 541 F.2d 226, 227 -228 (9th Cir. 1976) (district court correctly kept the case where, "the court and the litigants had expended considerable time on [the state claims] before the [federal claim] was dismissed.");
- *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995) (where the district court properly considered, "whether a return to state court would have been a waste of judicial resources when the case had been in federal court for some time" and where the 9th Circuit approved the fact that the "district court decided to retain the state claims based in part on the efforts already expended by counsel.")

In the present case, the defendants have failed to address the fact that this case has been well developed and is ready for adjudication in federal court. This is the paradigm of a situation where a federal court acts appropriately in keeping jurisdiction over a state claim even if the federal claim falls out.

The plaintiff's Unruh claim is for a single statutory penalty of $4,000. This Court acts properly in keeping the modest remaining state claim and it certainly does not infringe upon any principle of *comity*, especially given that the state claim is entirely predicated upon a federal

2

violation. In fact, the concept of comity weighs heavily *in favor of* keeping the present case in federal court under these circumstances: "There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong."[31] Here, of course, the Unruh state claim is entirely predicated upon and co-extensive with the federal ADA claim.[32]

In fact, most district courts that actually take the time to weigh the factors will keep supplemental jurisdiction over the state claims under these circumstances.[33] Again, though, the ADA claim is not moot. The court does not even need to reach this analysis. But if the ADA claim was moot, the court still acts properly in keeping the Unruh claim.

## V. CONCLUSION

For the foregoing reasons, the plaintiff respectfully requests this Court grant the plaintiff's motion.

Dated: May 24, 2019         CENTER FOR DISABILITY ACCESS

                             BY: */s/ Isabel Rose Masanque*
                                 ISABEL ROSE MASANQUE
                                 Attorney for Plaintiff

---

[31] *Gibbs*, supra, 383 U.S. at 727.
[32] *See* Complaint (Docket Entry 1), ¶ 51.
[33] *See, e.g., Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1131 (C.D. Cal. 2005); *LaFleur v. S&A Family LLC*, 2014 WL 2212018, *5 (C.D. Cal. 2014); *Munson v. Del Taco, Inc.,* 2006 WL 4704611, *6 (C.D. Cal. 2006*); Martinez v. Longs Drug Stores, Inc.*, 2005 WL 2072013, *6 (E.D. Cal. 2005); *Langer v. McHale,* 2014 WL 5422973, *1 (S.D. Cal. 2014).