Ara Sahelian, Esq. 169257
SAHELIAN LAW OFFICES
23046 Av. De La Carlota, Ste. 600
Laguna Hills, CA 92653
Phone: 949.859.9200
Fax: 949.954.8333
sahelianlaw@me.com
Attorneys for Colorado Professional Building, LLC; I & G Pharmacy, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
(Western Division - Los Angeles)

| | |
|---|---|
| CHRIS LANGER,<br>     PLAINTIFFS,<br>vs.<br>COLORADO PROFESSIONAL BUILDING, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY;<br>I & G PHARMACY, INC., A CALIFORNIA CORPORATION; AND DOES 1-10<br>     DEFENDANTS. | CASE NO.: 2:18-cv-02267-SJO-FFM<br>THE HONORABLE S. JAMES OTERO<br>Courtroom 10C<br><br>**POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS COLORADO PROFESSIONAL BUILDING, LLC'S AND I & G PHARMACY INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Complaint Filed: 3/20/18<br>Trial: 8/13/19<br>Pretrial Conference: August 5, 2019<br>Time: 9:00 AM |

**POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS COLORADO PROFESSIONAL BUILDING, LLC'S AND I & G PHARMACY INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

**I. BACKGROUND**

Plaintiff is in his mid-50s and is confined to a wheelchair. He is of sound mind, has excellent upper body strength, and is able to propel his wheelchair at a fast clip. Plaintiff has filed in excess of 1099 disability claims since 2012. He is unemployed and the last job he held was for a flower shop doing billing and arrangements. Plaintiff lives in San Diego, and passes time by driving to LA, hanging out at Venice Beach and Griffith Park. Plaintiff uses a van with a retractable ramp. He is able to get in and out of his van using his wheelchair, albeit it is difficult in that he has to accelerate and advance in order to be able to climb the ramp. He then has to grab the door to pull himself into the van. Plaintiff admitted that he does not need to drive a van; he can instead drive an ordinary car with hand controls. He is able to get his wheelchair in and out of an ordinary car. He owns a convertible Cadillac, which he can park in a standard accessible space.

On the date of the incident, he was purportedly searching for a van accessible spot but it is not clear what he was driving. Plaintiff asserts that he drove to the parking lots, observed that there was no van accessible aisle, and immediately thereafter left without stopping at the pharmacy. He claims he was in Glendale for a mediation and was looking for a particular item. He admitted that these are items he could find anywhere, including a CVS.

Plaintiff testified regularly going to a CVS within 7 miles of his house, and has been going there for the past 20 years. Plaintiff admitted that he didn't have immediate plans to return to I&G Pharmacy to find his items.

## II. DISCUSSION

### a. Plaintiff's claims quoted from the Complaint:

· Plaintiff alleges he went to the Pharmacy in "February 2018" to shop (Complaint, Dkt 1, ¶10);

· The rear parking lot serving the Pharmacy is not van accessible (*Id.* ¶13);

· There are two parking spaces marked and reserved for persons with disabilities, but they were not van accessible. The parking spaces measured 96 in width, while the access aisle measured 60 inches in width. These are not van accessible. (*Id.* ¶14);

· Plaintiff personally encountered this barrier. (*Id.* ¶19);

· This inaccessible parking lot denied the plaintiff full and equal access and caused him difficulty, discomfort, and embarrassment. (*Id.* ¶20).

· As a result of not being able to park safely, Plaintiff had to shop elsewhere. (*Id.* ¶ 21);

· Even though the plaintiff did not personally confront the barrier, the transaction counter at the Pharmacy was more than 36 inches in height. In fact, the transaction counter is 55 inches high. (*Id.* ¶23);

· There was no lowered, 36 inch portion of the transaction counter at the Pharmacy for use by persons in wheelchairs. (*Id.* ¶24);

· Currently, the transaction counter at the Pharmacy is more than 36

inches in height. (*Id*. ¶25);

· Currently, there is no lowered, 36 inch portion of the transaction counter at the Pharmacy for use by persons in wheelchairs. (*Id*. ¶26);

· Plaintiff plans to return and patronize the Pharmacy but will be deterred from visiting until the Defendants remove the barriers. (*Id*. ¶27);

· Plaintiff is and has been deterred from returning and patronizing the Pharmacy of his knowledge of the barriers that exist. Plaintiff will, nonetheless, return to assess ongoing compliance with the ADA and will return to patronize the Pharmacy as a customer once the barriers are removed. (*Id*. ¶32).

The Complaint was not amended.

Plaintiff testified that he owns two vehicles, a van with the pullout ramp and a convertible Cadillac. The Complaint is silent as to which he drove on the date of the incident.

**b. Affirmative Defenses Defendant has pleaded and plans to pursue.**

1. First Affirmative Defense: Plaintiff Has No Article III Standing.

Plaintiff lacks standing because he is unable to show he is likely to patronize the Pharmacy in the future, thereby failing to establish the imminent injury required for injunctive relief. Plaintiff may be able to demonstrate that he was actually injured because he personally suffered discrimination as a result of the barriers while patronizing the Pharmacy. However, he has not "establish[ed] a 'real and immediate threat of repeated injury,' *Fortyune v. Am. Multi-Cinema, Inc.,* 364 F.3d 1075, 1081 (9th Cir.

2004) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 496, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974)), because he did not demonstrate that he intended to return to patronize the Pharmacy. *D'Lil v. Best Western Encina Lodge & Suites,* 538 F.3d 1031, 1037 (9th Cir. 2008).

 To establish Article III standing in the instant case, Plaintiff must demonstrate he has suffered an injury-in-fact, that the injury is traceable to the defendant's actions, and that the injury can be redressed by a favorable decision. *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004). A plaintiff must allege that he or she "suffered an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992). In an ADA claim brought pursuant to 42 U.S.C. § 12188, a plaintiff may establish standing if he or she "is currently deterred from attempting to gain access" to a particular place of public accommodation due to its violations of the ADA. *Pickern v. Holiday Quality Foods Inc.,* 293 F. 3d 1133, 1136 (9th Cir. 2002).

 *In addition*, "to establish standing to pursue injunctive relief, which, again, is the only relief available to private plaintiffs under the ADA, an ADA plaintiff must demonstrate a 'real and immediate threat of repeated injury' in the future. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). An ADA plaintiff can show a likelihood of future injury sufficient to justify injunctive relief (1) if he "intends to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural barrier," or (2) if "discriminatory architectural barriers deter him from returning to a noncompliant accommodation." Id. at

950.

Plaintiff's claims regarding encountering barriers do not establish that he has standing to seek remedial relief under the ADA and to require Defendants to comply with the ADA. 42 U.S.C. § 12188(a) (1)-(2); *Cf. Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002)

Where the public accommodation being sued is far from the plaintiff's home, a plaintiff shows "actual or imminent injury sufficient to establish standing" when he or she "demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008). A plaintiff's "profession of an 'inten[t]'" to return to the places he had visited before is not sufficient to establish standing because "[s]uch 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

> ·6· · · · Q.· · So the -- the only reason you went to this
> ·7· ·particular location was to purchase K-Y Jelly, and the
> ·8· ·only reason you were there was because you had a
> ·9· ·mediation in the neighborhood; correct?
> 10· · · · A.· · Correct.
> 11· · · · Q.· · Okay.· Will you be able to remember at some
> 12· ·point which mediation that was?
> 13· · · · A.· · You would have to check with my attorneys. I
> 14· ·don't remember.
> 15· · · · Q.· · Is it necessary to go to a pharmacy to get the 16· ·type of K-Y Jelly that you

need?
17· · · · A.· · They have it --.· I know they have it at the
18· ·adult bookstores.· I've got it there in the past.· But I
19· ·don't know of anywhere else that would carry that.
20· · · · Q.· · Okay.· What about a regular supermarket, like 21· ·Ralphs or Pavilions or whatnot?
22· · · · A.· · If they have a pharmacy, they would -- they
23· ·would normally carry it too.

(Plaintiff's Deposition, Page 49)

6· · · · Q.· · When is the next time you intend to go back to ·
7· ·Colorado Professional Building?·
8· · · · A.· · I don't have any immediate plans.

(Plaintiff's Deposition, Page 52)

It bears keeping in mind that the distance between downtown San Diego and downtown Glendale is about 140 miles. Plaintiff lives in San Diego, and maintains that he would like to visit the Pharmacy "on a regular basis" to purchase his "K-Y Jelly" in Glendale, 140 miles away (see Plaintiff's Declaration, ¶14). He has not established a history of visits to the Pharmacy. He does not explain why he would want to re-visit the Pharmacy to buy a product he can effectively buy anywhere - from a CVS and Walgreens, to Ralph's and Costco.

22· · · · Q.· · BY MR. SAHELIAN:· How do you ordinarily
23· ·purchase the medication?
24· · · · A.· · At the pharmacy.
25· · · · Q.· · Okay.· Which pharmacy?
·1· · · ·A.··The CVS.
·2· · · · Q.· · Which one?
·3· · · · A.· · In Clairemont.· In San Diego.
·4· · · · Q.· · What street is it on?

```
 5    A.   I'm not sure which street it's on, but it's at
 6         the corner of Balboa and Genesee.
 7    Q.   How far away is it from your home?
 8    A.   Within seven miles.
 9    Q.   How did you happen to choose that CVS to fill
10         your prescriptions?
11    A.   I don't know.
12    Q.   How long have you filled your prescriptions
13         there?
14    A.   Probably 20 years.
15    Q.   When was the last time you filled your
16         prescription there?
17    A.   I don't know.
18    Q.   Was it more than 30 days ago?
19    A.   It's probably within 30 days.
```

(Plaintiff's Deposition, Page 35-36)

In contrast to his Declaration, Motion for Summary Judgment ¶14, Plaintiff testified at his deposition that he had no "immediate plans" to return to the store. In light of the fact that the product he sought could be purchased elsewhere near his residence, Plaintiff's vague intentions do not support a finding of actual or imminent injury. *Lujan*, 504 U.S. at 564.

An ADA plaintiff must not only meet the familiar requirements for Article III standing, but also demonstrate a "'real and immediate threat of repeated injury' in the future." In *Kalani v. Starbucks Coffee Co.*, 698 Fed. Appx. 883,885 (Ninth Circuit, 2017). Plaintiff made the requisite showing by averring that he "intended to return to Starbucks Coffee Store #6931 in Campbell, California ("Store") when he met with his attorney, attended a yearly expo and meetings of the San Jose chapter of the Californians for

Disability Rights organization, or visited family nearby." In *Rocca v. DEN 109 LP, 684 Fed. Appx. 667, 669* (Ninth Circuit, 2017) The court reaffirmed the district court's findings that Plaintiff lacked standing because he did not intend to return, as there was scant evidence supporting his intent. The court of appeals rejected Plaintiff's challenge to the district court's findings. There was no legal error, and the court's underlying factual determinations were not clearly erroneous. In *Feezor v. Sears, Roebuck & Co.*, 608 Fed. Appx. 476, 477 (Ninth Circuit, 2015). The court insisted that where "the public accommodation being sued is far from the plaintiff's home," a plaintiff must show "actual or imminent injury sufficient to establish standing" when he or she "demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible;" that a plaintiff's professed intent to return to a place he had visited before was not sufficient to establish standing because a some-day intention, without any description of concrete plans, or indeed even any specification of when the some day will be, does not support a finding of the 'actual or imminent' injury that our cases require." The court concluded that the plaintiff has not demonstrated an intent to return to the store; that he had not articulated a concrete plan to return to the store or to the geographic area where the store was located.

      There would be no reason for Plaintiff to drive from San Diego specifically to Glendale to purchase "K-Y Jelly." Plaintiff's intent to return is not genuine. There are hundreds of drugstores between San Diego and Glendale carrying the "K-Y Jelly" that Plaintiff uses. Plaintiff has no history of visiting the Pharmacy. His intent to re-visit the Pharmacy strains

credulity.

2. Second Affirmative Defense: The Barriers Alleged Have Been Removed and the ADA Claim Is Moot.

(1) <u>The Parking Lot and the Service Counter Are Compliant</u>:

The parking facility:

Defendants previously had an accessible parking space, with a 5 foot access aisle. The accessible parking space was moved left to make room for a wider 8 foot access aisle. The accessible parking space is currently compliant in that it measures 18 feet long, 9 feet wide, with an adjoining access aisle measuring 8 feet wide. See Declaration of Jason James, Defendants' designated expert.

The counter at the pharmacy:

Previously, the counter's height exceeded 34 inches. The existing counter could not be lowered as the space behind the counter is useful to the pharmacy techs. Instead, the door adjacent to the counter was modified. It has been split into two, allowing for the lower portion of the door to support a counter. The International Sign of Accessibility was mounted on the door. There is a permanent lowered service counter top for wheelchair users.

(2) <u>All Newly Discovered Violations Alleged By Plaintiff's Expert Are Irrelevant in That Defendants Have Not Had Fair Notice</u>.

Violation of Federal Rule of Civil Procedure 8

The Kent Report presents allegations raised for the first time in Plaintiff's Motion. These allegations are based on Kent's findings when she visited the Pharmacy. Defendants did not receive fair notice of the

additional claims.

In *Oliver v. Ralph's Grocery Co.* 654 F.3d 903, 906 (9th Cir. 2011), the plaintiff filed a complaint alleging that the defendant had violated the ADA and California state law. Months later, plaintiff attempted to submit an expert report providing additional details on current allegations and adding "several additional barriers not listed." *Id.* The Ninth Circuit affirmed the district court's ruling and held that the district court did not err in denying the expert report and additional allegations. *Id.* at 909. The Ninth Circuit emphasized that "for purposes of Rule 8, a plaintiff must identify the barriers that constitute the grounds for a claim of discrimination under the ADA in the complaint itself; a defendant is not deemed to have fair notice of barriers identified elsewhere." *Id.*

Here, Plaintiff never amended his complaint. He now seeks to include additional ADA violations in his Motion. The only portions of the Kent Report that should be analyzed by the Court are those named in Plaintiff's Complaint.

(3) <u>Defendant's Voluntary Removal of Alleged Barriers Prior to Trial Have The Effect of Mooting a Plaintiff's ADA Claim.</u>

Because a private plaintiff can sue only for injunctive relief (i.e., for removal of barriers) under the ADA, a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim. *Hubbard v. 7-Eleven, Inc.*, 433 F. Supp. 2d 1134, 1145 (S.D. Cal. 2006); cf. *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1179-80 (9th Cir. 2010).

### 3. Third Affirmative Defense: Plaintiff Need Not Have Suffered Injury-in-fact

If Plaintiff had been driving his convertible Cadillac at the time of the incident, he would have suffered no injury-in-fact. The Complaint is silent as to which of his two vehicles he drove (the convertible Cadillac or the van). Assuming Plaintiff did in fact visit the site, he would have had no difficulty parking and using the 5 foot access aisle provided by Defendants, had he been driving the Cadillac. The 5 foot access aisle would have been more than sufficient for him to transfer off and onto his wheelchair.

The 8 foot van accessible aisle is reserved for just that: vans. The reason an 8 foot access aisle is required for a van is to provide sufficient room for a retractable ramp to extend into the aisle, whereas the 5 foot aisle provides ample space for someone driving a Sedan (non-van) and using a wheelchair.

### 4. Fourth Affirmative Defense: The Court Should Decline to Exercise Supplemental Jurisdiction Over the UNRUH Civil Rights Act Cause of Action.

The Court should decline to exercise supplemental jurisdiction over Plaintiff's UNRUH Civil Rights Act cause of action, as it would serve the interests of judicial economy, fairness to litigants, and comity. *United Mine Workers*, 383 U.S. at 726.

Plaintiff's sole remaining claim does not arise under federal law. Pursuant to 28 U.S.C. § 1331, federal courts have original jurisdiction over claims arising under laws of the United States. "A state-law claim invokes

28 U.S.C. § 1331 jurisdiction only if it 'necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Shanks v. Dressel*, 540 F.3d 1082, 1093 (9th Cir. 2008) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005)).

The Ninth Circuit has held that claims based on state laws that incorporate the ADA by reference do not arise under federal law within the meaning of 28 U.S.C. § 1331, reasoning that Congress intended that such ADA violations not give rise to a federal cause of action for damages. Plaintiff will request that the Court exercise supplemental jurisdiction to hear his state law claims on the basis of judicial economy, but the Supreme Court has stated, and the Ninth Circuit has "often repeated, that 'in the usual case in which all federal- law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir.), supplemented, 121 F.3d 714 (9th Cir. 1997), as amended (Oct. 1, 1997).

In 2012, California heightened the pleading requirements to require specificity and verification of complaints (SB 1186, CCP § 425.50) in an attempt to deter baseless claims and vexatious disability discrimination litigation. High-volume plaintiffs, as in Plaintiff here (plaintiff has filed in excess of 1,000 cases since 2012), are made to pay an additional $1,000 for each case filed over 10 cases, within a 12 month period. This case rightfully belongs in State Court, as Plaintiff has filed a large number of disability

discrimination cases in a relatively short time.

Plaintiff has engaged in forum shopping, filing claims in Federal Courts as an "end-around" to state procedural protections. A complaint filed on behalf of a high-frequency litigant, in a California State Court, must state whether the Plaintiff is a high-frequency litigant, the number of complaints alleging a construction-related accessibility claim that the high-frequency litigant has filed during the 12 months prior to filing the complaint; the reason plaintiff was in the geographic area of the defendant's business, and the reason why he or she desired to access the defendant's business, including the specific purpose. Moreover, the complaint must be verified, and if not, it is subject to a motion to strike. A complaint filed by a high-frequency litigant must state in the caption "ACTION SUBJECT TO THE SUPPLEMENTAL FEE IN GOVERNMENT CODE SECTION 70616.5," and it must be signed by the Plaintiff.

California has a strong interest in protecting its citizens and businesses from abusive litigation and also in preventing its own laws from being misused for unjust purposes. Plaintiff should not be permitted an "end- around" SB 1186's reforms. Plaintiff should file these cases in State Court if he seeks to reap the benefits of the Unruh Civil Rights act, and he should pay the additional $1,000 filing fee per case required to initiate these suits. Plaintiff has in effect shortchanged the state of California an amount exceeding $1,000,000 since 2012.

### III. DEMAND FOR JURY TRIAL

Jury demand was made on June 8, 2018 by way of Defendants'

Answer.

## IV. DEMAND FOR ATTORNEY FEES

Defendants seek attorney fees. The ADA provides that "the court . . . in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . ." 42 U.S.C. § 12205. Where the prevailing party in an ADA action is the defendant, the court may award fees only if the plaintiff's action was "frivolous, unreasonable, or without foundation." *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1190 (9th Cir. 2001). Plaintiff's action is frivolous, unreasonable, and without foundation. Plaintiff's contention that he will be shopping regularly at a pharmacy nearly 130 miles away, for KY-Jelly, given he has maintained a relationship with a pharmacy near his residence in San Diego for decades, and given the product is available at any of a thousand supermarkets or drugstores, is not likely to be found credible by any juror. Plaintiff has no Article III standing, and is subject to the affirmative defenses noted.

Respectfully submitted:

Monday, July 15, 2019

Ara Sahelian, Esq.